# In the United States Court of Federal Claims

### No. 16-371L
### (Filed: March 26, 2018)

| | |
|---|---|
| * * * * * * * * * * * * * * * * * * * * * * * *<br><br>DELBERT and CATHY<br>SCHULENBURG, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant.<br><br>* * * * * * * * * * * * * * * * * * * * * * * * | *<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>* | Summary Judgment; Class Action; Fifth Amendment Takings; National Trails System Act; 16 U.S.C. § 1247(d); Ind. Rev. Stat. ch. 23 § 12 (1852); Ind. Code § 32–1–2–12; Ind. Rev. Stat. ch. 23 § 14 (1852); Ind. Code § 32-5-12-4; Ind. Code § 32-23-11-6; Fee Simple; Right-of-Way; Creation of Easement Under Indiana Law; Centerline Presumption. |

Mark F. (Thor) Hearne, II, Lindsay S.C. Brinton, Meghan S. Largent, and Stephen S. Davis, Arent Fox, LLP, 112 South Hanley Road, Suite 200, Clayton, MO 63105, for Plaintiffs.

Jeffrey H. Wood and Kristine S. Tardiff, United States Department of Justice Environment & Natural Resources Division, Natural Resources Section, 53 Pleasant Street, 4th Floor, Concord, NH 03301, and Laura Duncan,  United States Department of Justice Environment & Natural Resources Division, Natural Resources Section, P.O. Box 7611,  Washington, DC 20044-7611, for Defendant.



## OPINION AND ORDER

**WILLIAMS**, Judge.

In this action, Plaintiffs claim that the Government effected a taking of their property in Indiana when it converted an inactive railroad right-of-way to a recreational trail, pursuant to the National Trails System Act Amendments of 1983.  Plaintiffs claim that their predecessor owners granted easements to the Evansville & Richmond Railroad for the sole purpose of operating a railroad, and that once these rights-of-way were no longer used for railroad operations, the exclusive right to physical ownership, possession, and use of these properties reverted to Plaintiffs as fee owners.  Currently before the Court are the parties' cross-motions for partial summary judgment.

## Background

## The Trails Act

Congress enacted the Trails Act to preserve shrinking rail trackage by converting unused rights-of-way to recreational trails. Preseault v. Interstate Commerce Comm'n, 494 U.S. 1, 5 (1990) ("Preseault I"); see also 16 U.S.C. § 1241 et seq. (2012). The operation of the Trails Act is subject to the Fifth Amendment to the United States Constitution, which provides that private property shall not "be taken for public use, without just compensation." U.S. Const. amend. V. Accordingly, when private property interests are taken by the Government pursuant to the Trails Act, commonly known as "rails-to-trails" cases, the property owners are entitled to just compensation. See Preseault I, 494 U.S. at 13. Because property rights arise under state law, Indiana law governs whether the landowners in this case have a compensable property interest. See Ruckelshaus v. Monsanto Co., 467 U.S. 986, 1001 (1984) (citing Webb's Fabulous Pharmacies, Inc. v. Beckwith, 449 U.S. 155, 161 (1980)); Preseault I, 494 U.S. at 20 (O'Connor, J., concurring).

In a rails-to-trails case, a taking, if any, occurs when "state law reversionary interests are effectively eliminated in connection with a conversion of a railroad right-of-way to trail use." Caldwell v. United States, 391 F.3d 1226, 1228 (Fed. Cir. 2004). The Trails Act prevents a common law abandonment of the railroad right-of-way from being effected, thus precluding state law reversionary interests from vesting. Id. at 1229. Stated in traditional property law parlance, upon abandonment or termination of a railroad's easement, "the burden of the easement would simply be extinguished, and the landowner's property would be held free and clear of any such burden." Toews v. United States, 376 F.3d 1371, 1376 (Fed. Cir. 2004). By preventing the abandonment and concomitant restoration of a fee simple unburdened by the easement, the Trails Act effects a taking. See Barclay v. United States, 443 F.3d 1368, 1371 (Fed. Cir. 2006).

As the Federal Circuit has explained:

> Abandonment is suspended and the reversionary interest is blocked "when the railroad and trail operator communicate to the STB their intention to negotiate a trail use agreement and the agency issues an NITU that operates to preclude abandonment under section 8(d)" of the Trails Act. We concluded that "[t]he issuance of the NITU is the only government action in the railbanking process that operates to prevent abandonment of the corridor and to preclude the vesting of state law reversionary interests in the right of way." Thus, a Trails Act taking begins and a takings claim accrues, if at all, on issuance of the NITU.

Id. at 1373 (quoting Caldwell, 391 F.3d at 1233-34) (alteration and emphasis in original). If standard abandonment had occurred under 49 U.S.C. § 10903, the railroad, as the owner of the servient estate, would not retain any property interest in the right-of-way, and that property interest would revert to the dominant landowner. Id. at 1371. Thus, the Trails Act, in preventing this reversion, effects a taking. See id. In another sense, the taking occurs when the Government, pursuant to the Trails Act, creates a new easement for a new use over land that was encumbered by an easement limited to railroad purposes. See Preseault v. United States, 100 F.3d 1525, 1550 (Fed. Cir. 1996) ("Preseault II") (describing the conversion of a railroad easement to a recreational

trail as "a new easement for [a] new use"). The statutory imposition of this second easement - - which otherwise had not been granted - - is a taking. Id.

## The NITU and Trail Use Agreement

The Crane-Bedford Railroad Line, segments of which are at issue here, was initially developed by the Evansville and Richmond Railroad, a company incorporated in Indiana on September 11, 1886. Def.'s Mot. Ex. 1, at 3. The Evansville and Richmond Railroad acquired the segments of the corridor by six deeds from grantors Ferguson, Cosner, Dussard, Whitted, Johnson, and Cox in the 1880s. In 1897, the Evansville and Richmond Railroad was acquired by John R. Walsh and renamed the Southern Indiana Railroad. Pls.' Mot. Ex. 2-22, at 6.

Through a series of railroad reorganizations, mergers, and acquisitions, the line was eventually acquired by Canadian Pacific Railway, and ultimately, in 2006, Indiana Rail Road ("INRD") acquired Canadian Pacific's portion of the line between Chicago, Illinois and Louisville, Kentucky by quitclaim deed. Id. Ex. 2-3, at 9 n.6. Since INRD's acquisition, on-line and overhead traffic on the Crane-Bedford line have decreased, and on December 7, 2009, INRD filed a petition with the STB seeking an exemption under 49 U.S.C. § 10502 from the prior approval requirements of 49 U.S.C. § 10903 to abandon approximately 21.15 miles of its railroad corridor extending across portions of Martin and Lawrence counties in Indiana. INRD determined that the "limited amount of overhead traffic . . . hardly justifie[s] the costs of maintaining the Line." Id. at 10.

The STB served and published a notice instituting an exemption proceeding on December 23, 2009, and on December 28, 2009, the Indiana Trails Fund, Inc. ("ITF") requested the STB invoke Section 8(d) of the Trails Act to allow for interim recreational use of the railroad right-of-way. On March 26, 2010, the STB issued a NITU for the Crane-Bedford Line, and provided INRD and ITF with 180 days to negotiate an agreement for interim trail use and railbanking of the corridor.

On September 2, 2011, INRD reported that it had reached an agreement with ITF on "all terms of a trail use agreement with the exception of certain language related to insurance." Pls.' Mot. Ex. 2-48, at 2. Consistent with that report, INRD entered into a License Agreement with ITF on September 16, 2011, relating to the railroad right-of-way ("Licensing Agreement"). Under the Licensing Agreement, INRD granted ITF the right to occupy the premises for use as a "bicycle-pedestrian-equestrian recreational-transportation trail" while reserving rights regarding the continued and future use of the premises for utility facilities and other structures within the corridor. The Licensing Agreement also reserved for INRD all current and future mineral rights in the premises and required ITF to assure that its use would not interfere with the rights reserved by INRD. In addition, INRD expressly retained the right to reactivate railroad service over all or part of the premises. Id. Ex. 3, at 2-3. The subject corridor is presently known as the Milwaukee Road Transportation Trailway, and portions of the trail have been improved and opened for recreational use.

## Discussion

## Summary Judgment Standard

Summary judgment is appropriate where the evidence demonstrates that there is "no genuine dispute as to any material fact and the moving party is entitled to a judgment as a matter

of law." RCFC 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). A genuine issue is one that "may reasonably be resolved in favor of either party." Liberty Lobby, 477 U.S. at 250. A fact is material if it "might affect the outcome of the suit . . . ." Id. at 248. The moving party bears the burden of establishing the absence of any genuine issue of material fact, and any doubt over factual issues will be resolved in favor of the non-moving party. Mingus Constructors, Inc. v. United States, 812 F.2d 1387, 1390 (Fed. Cir. 1987) (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) and SRI Int'l v. Matsushita Elec. Corp., 775 F.2d 1107, 1116 (Fed. Cir. 1985)). Once the moving party's burden is met, the onus shifts to the non-movant, who must present sufficient evidence of a material fact in dispute that would allow a reasonable finder of fact to rule in the non-movant's favor. Liberty Lobby, 477 U.S. at 256. The evidence need not ultimately be admissible, but mere denials, conclusory statements, or evidence that is merely colorable or not significantly probative will not defeat summary judgment. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986); Liberty Lobby, 477 U.S. at 249-50; Mingus Constructors, 812 F.2d at 1390-91.

A court does not weigh each side's evidence when considering a motion for summary judgment, but "'inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp, 475 U.S. 574, 587 (1986) (quoting Diebold, 369 U.S. at 655) (omission in original). When opposing parties both move for summary judgment, the court reviews the motions under the same standard. First Annapolis Bancorp, Inc. v. United States, 75 Fed. Cl. 263, 275 (2007), reversed on other grounds by First Annapolis Bancorp, Inc. v. United States, 644 F.3d 1367 (Fed. Cir. 2011). In such instances, "the court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." Mingus, 812 F.2d at 1391.

## Fifth Amendment Takings

In any takings case, "only persons with a valid property interest at the time of the taking are entitled to compensation." Wyatt v. United States, 271 F.3d 1090, 1096 (Fed. Cir. 2001). This Court must determine what, if any, property interests the landowners had in the right-of-way, and whether the Government's actions constituted a taking of those interests. If the railroad did not receive a fee interest but only an easement and if the recreational trail use authorized by the NITU exceeds the scope of that easement, a taking has occurred. Ladd v. United States, 630 F.3d 1015, 1019 (Fed. Cir. 2010).

In Preseault II, the Federal Circuit explained that whether a plaintiff is entitled to compensation under the Tucker Act in a rails-to-trails case depends on three determinative issues:

> (1) who owned the strips of land involved, specifically did the Railroad . . . acquire only easements, or did it obtain fee simple estates; (2) if the Railroad acquired only easements, were the terms of the easements limited to use for railroad purposes, or did they include future use as public recreational trails; and (3) even if the grants of the Railroad's easements were broad enough to encompass recreational trails, had these easements terminated prior to the alleged taking so that the property owners at that time held fee simples unencumbered by the easements.

Preseault II, 100 F.3d at 1533. The Court addresses these questions in turn.

**Did the Railroad Acquire Easements or Fee Simple Estates?**

To establish a taking, Plaintiffs must establish their ownership interest in the private property allegedly taken. See Cienega Gardens v. United States, 331 F.3d 1319, 1328 (Fed. Cir. 2003). Ultimately, whether the landowners have a property interest in the land underlying the railroad right-of-way depends upon the nature of the original conveyance acquired by the railroad. Ellamae Phillips Co. v. United States, 564 F.3d 1367, 1373-74 (Fed. Cir. 2009). The interpretation of those original conveyances to the railroad turns on applicable state law. See Rogers v. United States, 814 F.3d 1299, 1305 (Fed. Cir. 2015).

When interpreting a deed, the object is to ascertain the intent of the parties. Brown v. Penn Cent. Corp., 510 N.E.2d 641, 643 (Ind. 1987).[1] To do so, Indiana courts consider the deed in its entirety. Tazian v. Cline, 686 N.E.2d 95, 97 (Ind. 1997). The deed is to be interpreted by "considering the parts of the deed together so that no part is rejected." Id.; see also Keene v. Elkhart Cty. Park & Recreation Bd., 740 N.E.2d 893, 897 (Ind. Ct. App. 2000) (favoring a construction that "reconciles and harmonizes the entire deed"). Courts are constrained however by the "four corners" rule:

> [T]he language of the instrument, if unambiguous, determines the intent of the instrument such that parol or extrinsic evidence is inadmissible to expand, vary, or explain the instrument unless there has been a showing of fraud, mistake, ambiguity, illegality, duress or undue influence. Even if ambiguity exists, extrinsic evidence is only admissible to explain the instrument and not contradict it.

Lippeatt v. Comet Coal & Clay Co., Inc., 419 N.E.2d 1332, 1335 (Ind. Ct. App. 1981); see also Clark v. CSX Transp., Inc., 737 N.E.2d 752, 757-58 (Ind. Ct. App. 2000).

To determine the nature of the property interests conveyed to the railroad by each deed, the court must examine the deeds in light of the common law and the law of Indiana at the time they were executed. Preseault II, 100 F.3d at 1534. An Indiana statute in effect at the time the subject deeds were executed and still in place today identifies standard language to be included in a deed when conveying a fee simple interest. The statute provides that any conveyance worded: "'A.B. conveys and warrants to C.D.' (here describe the premises) 'for the sum of' (here insert the consideration) . . . shall be deemed and held to be a conveyance in fee simple to the grantee . . . ." Ind. Rev. Stat. ch. 23 § 12 (1852); Ind. Code § 32–1–2–12. The statute further provides that "if it be the intention of the grantor to convey any lesser estate, it shall be so expressed in the deed." Ind. Rev. Stat. ch. 23 § 14 (1852).

Not all deeds however follow this precise formulation. In Brown v. Penn Central Corp., the Supreme Court of Indiana provided additional guidance, explaining:

> A deed that conveys a right generally conveys only an easement. The general rule is that a conveyance to a railroad of a strip, piece, parcel of land, without additional

---

[1]   The Indiana Constitution provides that the judicial power of the State is vested in a Supreme Court, a Court of Appeals, Circuit Courts, and such other courts as the General Assembly may establish. Supreme Court cases are cited as (Ind.), while Court of Appeals cases are cited as (Ind. Ct. App.).

language as to the use or purpose to which the land is to be put or in other ways limiting the estate conveyed, is to be construed as passing an estate in fee, but reference to a right-of-way in such a conveyance generally leads to its construction as conveying only an easement.

Brown, 510 N.E.2d at 644 (emphasis in original) (internal citations omitted); see Ross, Inc. v. Legler, 199 N.E.2d 346, 348 (Ind. 1964) ("A deed when the interest conveyed is defined or described as a 'right of way,' conveys only an easement . . . ."); Richard S. Brunt Trust v. Plantz, 458 N.E.2d 251, 255-56 (Ind. Ct. App. 1983) (interpreting a deed in which the grantors "convey[ed] and quit claim[ed] . . . , for railroad purposes, the following real estate," and holding that "[r]eference to the intended use of the land indicate[d] that an easement was conveyed" because "the grantors would have no reason to specify the use if conveying a fee simple"); but see Pozniac v. Porter Cty. Dev. Corp., 779 N.E.2d 1185, 1190-91 (Ind. Ct. App. 2002) (holding that a deed that conveyed to the railroad company "[f]orever, a strip of land for railroad purposes" conveyed a fee simple, declining to treat the phrase "for railroad purposes" as limiting language because there was no statement indicating that the deed would be void if the strip of land was not used for railroad purposes, and the term "right-of-way" did not appear in the deed).

The mere presence of the term "right-of-way" however does not necessarily indicate an intent to convey an easement. Clark, 737 N.E.2d at 758. The Clark court explained:

Deeds generally contain three important clauses: the granting clause, the habendum clause, and the descriptive clause.

\*       \*       \*

The habendum clause may modify or limit the grant, but it does not defeat a clear, unambiguous grant . . . . It is generally held that if there are any inconsistencies between the granting clause and the habendum clause, the granting clause will prevail because the granting clause is the most dependable expression of the grantor's intention and is considered to be the very essence of the deed.

Id. (internal citations and quotation marks omitted).

When appearing outside of the granting clause, the term "right-of-way" can be of limited value because it has two meanings. It can refer "to 1) a right to cross over the land of another, an easement, and 2) the strip of land upon which a railroad is constructed." Id. (citing Joy v. City of St. Louis, 138 U.S. 1 (1891); Ind. Code § 32–5–12–4 ("[p]roviding that 'right-of-way' means a strip or parcel of real property in which a railroad has acquired an interest for use as a part of the railroad's transportation corridor'"); Black's Law Dictionary 191 (5th ed. 1979) ("[s]tating that the '[t]erm 'right of way' sometimes is used to describe a right belonging to a party to pass over land of another, but it is also used to describe that strip of land upon which railroad companies construct their road bed, and, when so used, the term refers to the land itself, not the right of passage over it'" (alteration in original))). Even if the granting clause favors construction as fee simple, "such language is just a factor in determining whether the parties intended to grant a fee or an easement" and courts will look to "other parts of the deed to see if the grantor expressed an intention to convey a lesser estate than fee simple." Tazian, 686 N.E.2d at 98. Therefore, the

meaning of the term "right of way" must be examined within the four corners of the deed to determine its intended meaning.

A party's intent to convey an easement may also be evident in the title of the deed. While the "cover and title of the instrument [are not considered] where the granting language is clear and unambiguous . . . [,] the title may provide additional evidence of intent where the language of the deed is unclear . . . ." Clark, 737 N.E.2d at 758 (citing Brown v. State, 924 P.2d 908, 915 (Wash. 1996)). The court also explained that words such as "'over, across, and through' may provide evidence of a party's intent to convey an easement where the words describe the use of the land." Id. (citing Tazian, 686 N.E.2d at 99).

The type and amount of consideration given for the conveyance is also considered when attempting to ascertain the intent of the parties. Tazian, 686 N.E.2d at 99; Richard S. Brunt Trust, 458 N.E.2d at 255. Nominal consideration or conveyances in which the only consideration is the benefit to the landowner derived from the construction of the railroad, rather than the full market value of the interest conveyed, may reflect an intent to create an easement. Richard S. Brunt Trust, 458 N.E.2d at 255. The consideration or lack thereof is not dispositive however. "[L]ack of consideration or nominal consideration alone is not sufficient cause for setting aside a deed." Clark, 737 N.E.2d at 759.

Courts must also be cognizant of the fact that "[w]here a deed is ambiguous as to the character of the interest conveyed and the railroad was responsible for the form of the deed, [courts] will construe the language of the deed in favor of the grantor and against the railroad." Id. (citing Hefty v. All Other Members of the Certified Settlement Class, 680 N.E.2d 843, 855 (Ind. 1997)). Public policy dictates construction of any ambiguity in favor of the original grantors. Ross, Inc., 199 N.E.2d at 348. In Ross, Inc., the Indiana Supreme Court stated:

> Public policy does not favor the conveyance of strips of land by simple titles to railroad companies for right-of-way purposes; either by deed or condemnation. This policy is based upon the fact that the alienation of such strips or belts of land from and across the primary or parent bodies of the land from which they are severed, is obviously not necessary to the purpose for which such conveyances are made after abandonment of the intended uses as expressed in the conveyance, and that thereafter such severance generally operates adversely to the normal and best use of the property involved. Therefore, where there is ambiguity as to the character of the interest or title conveyed such ambiguity will generally be construed in favor of the original grantors, their heirs or assigns.

Id.

## Initial Conveyances of the Railroad Corridor

### The Cosner Conveyance (Stipp)

The Evansville and Richmond Railroad Company originally acquired the Stipp segment of the corridor by two warranty deeds, the Ferguson and Cosner deeds. The Ferguson deed conveyed a fee simple interest to the Railroad under Indiana law, and Plaintiffs did not rely upon it in their motion for partial summary judgment. The Ferguson deed was executed by George C. and Martha

L. Ferguson on May 19, 1891, and it employs the standard language used to convey fee simple title pursuant to Indiana Code § 32-17-1-2.  The deed states:

> This Indenture Witnesseth, that George C. Ferguson and Martha L. Ferguson his wife of Lawrence County in the State of Indiana <u>Convey and Warrant</u> to the Evansville and Richmond Rail Road Company of _____ County in the state of Indiana for the sum of Two hundred and Fifty dollars the receipt whereof is hereby acknowledged, the following Real Estate, in Lawrence County in the state of Indiana, to wit Beginning where the Evansville and Richmond Rail Road crosses the west line of Fractional Section Twenty nine  . . . to the East line of Section 29 Town five North Range 1 West Taking a <u>strip of ground</u> Thirty five (35) feet in width on each side of said Rail Road as now located and constructed containing 7 39/100 acres more or less.

Def.'s Mot. Ex. 6 (emphasis added).  The Ferguson deed contains no additional habendum clause and no reversionary language.  It conveys the "strip of ground" and not merely the right to use that land.  This deed is unambiguous, and under Indiana law conveyed a fee simple interest to the Railroad.

The Cosner deed contains key differences from the Ferguson deed:

> This Indenture Witnesseth, That John W Cosner and Sarah E Cosner his wife of Lawrence County and State of Indiana Convey and Warrant to The Evansville and Richmond Rail Road Company <u>for Rail way purposes</u> of County, in the State of _____ for the sum of two hundred ($200) dollars the following Real Estate, in Lawrence County, in the State of Indiana, to wit: Beginning where the center line of The Evansville and Richmond Rail Road crosses the West line of the North East fractional One fourth (1/4) of Section Twenty nine (29) in Township Five (5) North, . . . to the East of North West ¼ of section Twenty eight Township Five (5) North Range One (1) West at a point 578 feet North four degrees west of the south east corner of the north west ¼ of section Twenty-eight (28) in Township five (5) North Range One (1) being a <u>Strip</u> Thirty five (35) feet in width from the center line of said railroad on either side of said Rail Road as now located the said Rail Road Company is to make all necessary cattle guards.  Said Grantor gives <u>said right of way</u> to said Rail Road Company, waiving and relinquishing all damages for any reason whatsoever to date and all damages by reason of about four (4) acres borrowed dirt and the digging up and removing of the same by said Rail Road Company.  Said Rail Road to make no charge for switch put into Cosners & Norton quarry but reserving the iron in case of abandonment.

Id. Ex. 7 (emphasis added).

Like the Ferguson deed, the Cosner deed "convey[s] and warrant[s]" real estate to the Evansville and Richmond Railroad Company.  Although the use of language such as "grant and convey" favors the construction of the deed as conveying a fee simple, "such language is just a factor in determining whether the parties intended to grant a fee or an easement."  Tazian, 686 N.E.2d at 98.  Therefore, we must "look to other parts of the deed to see if the grantor expressed an intention to convey a lesser estate than fee simple."  Id.

Several provisions of the Cosner deed persuade the Court that this deed conveyed an easement to the Railroad - - the conveyance:

- specified that the use of the land was for "Rail Road purposes;"

- referred to the strip as a "right of way;" and

- included the Grantor's waiver of damages due to the Railroad's digging up and removing about four acres of dirt - - damages which the Grantors would not have needed to waive if they had conveyed the land outright to the Railroad in fee simple.

Defendant argues that the Cosner deed is "nearly identical" to the Ferguson deed and therefore should also be interpreted to convey a fee simple interest under Indiana law. The Cosner deed, however, conveys the "Strip" specifically "for Rail way purposes," thus adding significant qualifying language that is absent from the Ferguson deed. "[A] deed conveying a right of way to a railroad company conveys an easement only" while the general rule is that a deed that conveys a "strip, piece, or parcel of land, <u>without additional language as to the use or purpose to which the land is to be put or in other ways limiting the estate conveyed</u>, is to be construed as passing an estate in fee . . . ." <u>L. & G. Realty & Constr. Co. v. Indianapolis</u>, 139 N.E.2d 580, 585 (Ind. Ct. App. 1957) (en banc) (emphasis added) (internal citation and quotation marks omitted).

Finally, public policy as expressed by the Indiana Supreme Court favors construing the conveyance as an easement. As, the Indiana Supreme Court explained in <u>Brown v. Penn Central Corp.</u>, at the time these conveyances were made:

> If one were to speculate as to what the parties intended back in 1871, several questions arise. If the railroad purchased the strip of land in fee simple, why was this not expressed in the deed? . . . Surely the railroad, the more experienced party in this transaction, would have included words to indicate the strip of land was to be conveyed in fee simple if that was the parties' intent. Since the railroad was responsible for the form of the deed, the language used will be construed against it and in favor of the grantor. Further, we are mindful of the public policy in this State in favor of finding easements as opposed to conveyances in fee simple.

510 N.E.2d at 644 (internal citations omitted).[2]

### The Dussard Conveyance (Anderson)

The Dussard deed, recorded on February 8, 1893, states:

This Indenture Witnesseth that Mr. Joseph Dussard and Charlotte E. Dussard, his wife, John Dussard and August E. Dussard both unmarried of Lawrence County

---

[2]     Defendant argues that in the event that the Court finds the Cosner deed conveyed an easement, the Stipps' land located on both sides of the railway corridor implicates crossing rights. In Defendant's view, the question of whether the Trails Act preempts state law governing crossing rights is one of law amenable to summary judgment. However, because, as Plaintiffs argue, crossing rights concern the value of the property, this issue will be addressed in the valuation phase of the case.

and State of Indiana <u>Convey and Warrant</u> to The Evansville and Richmond Rail Road Company <u>for Rail Road purposes</u> of – County, in the State of Indiana for the sum of Three Hundred and Seventy-five ($375.00) Dollars the following Real Estate in Lawrence County, in the State of Indiana, to wit:

<u>A right of way</u> seventy (70) feet in width being thirty-five (35) feet on each side of the center line of said Evansville and Richmond Rail Road as now located across and over the South half of the North West quarter of Section Thirty one (31) in Township Number five (5) North, in Range One (1) West; Also a strip seventy feet (70) in width – being thirty five (35) feet on each side of the center line of said Rail Road as now located across and over the North West corner of the South West quarter of the North East quarter of the same section town and range.  The grantors hereby releasing all right for extra right-of-way and all damages by reason of the <u>right of way</u> herein and damages by reason of the occupancy thereof.

It is expressly understood by the parties to this instrument that the <u>right of way</u> mentioned in the above runs diagonally through a piece of land very nearly square in form – containing about four acres belonging at one time to one Hays and Dussard and the said grantors herein convey as a <u>right of way</u> from the center line of said Rail Road track all the right title and interest they have in all said lands taken as a <u>right of way</u>.

Def.'s Mot. Ex. 8 (emphasis added).

Like the Cosner deed, the granting clause conveys "Real Estate" which is later described as a "right of way" and "[a]lso a strip."  Importantly, the Grantors in the Dussard conveyance specified that the use of the land was for "Rail Road purposes," and described the land conveyed as a railroad right-of-way five separate times.  <u>See</u> <u>Richard S. Brunt Trust</u>, 458 N.E.2d at 256.  Defendant argues that the language "for Rail Road purposes" is merely descriptive, and does not limit the grant because it does not include the phrase "so long as" or include a clause indicating that the land shall revert upon the cessation of such use.  Because deeds should be construed so that no part is superfluous, the argument that the language "for Rail Road purposes of ___ County" is merely descriptive fails.  Here, the language "for Rail Road purposes" conveys an intent to convey a lesser estate than fee simple.  <u>Brown</u>, 510 N.E. 2d at 644.  Similar to the Cosner deed, the fact that the Grantors waived damages by virtue of the Railroad's "occupancy" of the right-of-way, suggests that the Grantors only granted the Railroad an easement, not full ownership - - the Grantors would not have needed to waive such damages if they conveyed the land outright in fee.

Defendant argues that the language in the granting clause "convey and warrant" is consistent with the controlling statute in effect at the time of conveyance, which provides that any conveyance worded as "'A.B. conveys and warrants to C.D.' [here describes the premises] 'for the sum of' [here insert the consideration] shall be deemed and held to be a conveyance in fee simple to the grantee . . . ."  Ind. Rev. Stat. ch. 23 §§ 12, 14 (1852).  Although the use of the language "grant and convey" favors the construction of the deed as conveying a fee simple, "such language is just a factor in determining whether the parties intended to grant a fee or an easement." <u>Tazian</u>, 686 N.E.2d at 98.  Here, the specification that the land was to be used for railroad purposes and the repeated description of the land as a right-of-way convince the Court that the Grantors intended

to convey an easement.  Finally, public policy in Indiana favors construing the deed as conveying an easement.  See Brown, 510 N.E. 2d at 644.

### The Whitted Conveyance (Schulenburg)

The Schulenburgs own two adjacent lots which abut the segment of the corridor conveyed to the Evansville & Richmond Railroad by a quitclaim deed from their predecessor-in-title, Thomas Witted, dated December 29, 1888, and recorded in Lawrence County on January 22, 1889.  The deed states:

> In consideration of the sum of Five Hundred Dollars the receipt of which is hereby acknowledged, I Thomas A. Whitted and Perthania Whitted his wife of the County of Lawrence State of Indiana, do hereby remise, release and forever convey and quit claim to the Evansville & Richmond Railroad Company a perpetual right of way 76 feet in width for the building and maintenance of its road main tracks, side tracks and switches across my land in county and state aforesaid being described as follows to wit; Beginning where the center line of the Evansville and Richmond Railroad crosses the west line of the North Eastquarter of section 22, town 5 North, range West at a point 280 feet North, 4° West of the South West corner of the North Eastquarter of same section, town and range aforesaid, thence with a 5° curve to the North 1159 feet, thence North 31° East 300 feet thence with a 4° curve to the North 400 feet to the East line of the South West quarter of the North East quarter of same section, town and range at a point 25 feet South 4° East of the North East corner of the South West quarter of the North East quarter of same section, town and range, being a strip of ground 35 feet in width on either side of the center line of said railroad road as now located.  Also one other tract of land in said County and state aforesaid to wit: Beginning where the center line of the Evansville and Richmond Railroad crosses the South line of the South East quarter of section 15 town 5 North, range West at a point 1053 feet South 86° West of the South East corner of the South East quarter of section, town and range, aforesaid thence with a 5° curve to the North 400 feet, thence North 13 ½ ° West 550 feet, thence with a 3° curve to the South 600 feet, thence with a 6° curve to the South 850 feet to the East line of the West section, town and range aforesaid at a point. 388 feet South 4° East of the North East corner of the West half of the North East quarter of the South East quarter of same section, town and range aforesaid, said strip of land, being 35 feet in width on either side of the center line, of said railroad as now located, said Railroad, agreeing to put in and maintain all necessary cattle guards, and crossings over said lands and said grantors reserving all timber on the lands herein so conveyed.  Said Railroad is to fence said railroad as soon after it is finished as practicable.

Def.'s Mot. Ex. 9 (emphasis added).

The granting clause of this deed applies to two separate parcels or premises.  The first is "a perpetual right of way 76 feet in width" which is now located in the area referred to as Section 22 in the current subdivision.  The second is "one other tract of land in Said County and state" which is located in the area now referred to as Section 15 in the current subdivision.

With respect to the first parcel, the granting clause in the conveyance "does remise, release and forever convey and quit claim to the Evansville & Richmond Railroad Company a perpetual <u>right of way</u>" for "the building and maintenance of its road main tracks, side tracks and switches . . . ." (emphasis added). Where, as here in the Whitted deed, the term "right-of-way" is used in the descriptive clause in reference to the subject matter of the deed, as opposed to elsewhere in the deed, the deed is much more likely to be found to convey an easement. <u>CSX Transp., Inc. v. Rabold</u>, 691 N.E.2d 1275, 1278 (Ind. Ct. App. 1998). While ordinarily a quitclaim deed conveys all the existing interest the grantor has in the land, a deed that conveys a right, rather than a "strip, piece or parcel of land" generally conveys an easement. <u>Brown</u>, 510 N.E.2d at 644; <u>Davidson v. Coon</u>, 25 N.E. 601, 603 (Ind. 1890).

This Court recognizes though that the description of the right-of-way as "perpetual" must be taken into account. While not dispositive, the adjective "perpetual" like the adverb "forever" is a "temporal descriptor more consistent with the conveyance of a fee than of an easement." <u>Poznic</u>, 779 N.E.2d at 1190. Nonetheless, where these temporal modifiers describe a "right of way" with references to railroad purposes, the totality of the language conveys an easement. In <u>Cincinnati, Indianapolis, St. Louis, & Chicago Railway Co. v. Geisel</u>, the Indiana Supreme Court determined that a conveyance that "assign[ed], release[d], relinquish[ed], and <u>forever quitclaim[ed]</u> to the Lawrenceburg & Upper Mississippi Railroad Company <u>the right of way</u> for so much of said railroad" and which reserved all timber rights to the grantor, conveyed an easement regardless of the temporal language and quitclaim format. 21 N.E. 470, 470 (Ind. 1889) (emphasis added). Here, similarly, a "right of way" across land over which the Grantor is retaining ownership is what is being conveyed, not the land itself. The granting clause conveys a right-of-way, as its use is specifically limited to railroad uses, i.e. "the building and maintenance of its road main tracks, side tracks and switches <u>across my land</u> . . . ." (emphasis added).

With respect to the second premise, the Section 15 property, the Court similarly construes the deed to convey an easement. The copy of the Whitted deed transcribed in Lawrence County records is titled "Release of Right of Way," which applies to both land areas conveyed. The second premise itself, "one other tract of land," is described as a "strip of land, being 35 feet in width on either side of the center line, of said railroad as now located." There is no second granting clause accompanying the description of the second premise conveyed, "the South East quarter of same section" described previously in the deed. The single granting clause, which expressly conveys a perpetual right-of-way for specified railroad uses, must be read to apply to both premises. In addition, the Grantors reserved "<u>all</u> timber on the lands herein so conveyed," expressing that all premises in the deed were conveyed in the same way - - that for the duration of the easement the Grantors retained timber rights. In a similar vein, the conveyance was contingent upon the railroad "agreeing to put in and maintain all necessary cattle guards, and crossings over said lands" and "fenc[ing] said railroad as soon after it is finished as practicable," with respect to the duration of the easement for both parcels. Def.'s Mot. Ex. 9.

When interpreting a deed, Indiana courts consider the deed in its entirety. <u>Tazian</u>, 686 N.E.2d at 97. The deed must be interpreted by "considering the parts of the deed together so that no part is rejected." <u>Id.</u>; <u>see also</u> <u>Keene</u>, 740 N.E.2d at 897 (favoring a construction that "reconciles and harmonizes the entire deed"). Without a contrary expression of clear intent, it would be inconsistent to interpret this single conveyance to grant an easement over one area and a fee simple over another when both areas are a continuation of the same railroad right-of-way and both are

described as being "35 feet in width on either side of the center line of said railroad road as now located."

### The Johnson Conveyance (Silvers)

The Silvers own a parcel of land adjacent to the segment of the corridor conveyed on October 5, 1888, by Elisha and Ellen Johnson, predecessors-in-title to William and Mamie Silvers, and recorded in Lawrence County on November 8, 1889.  The copy of the Johnson deed recorded in the Lawrence County records is titled "Release of Right of Way" and states:

> In consideration of the sum of One Dollar the receipt of which is hereby acknowledged, I, Elisha G. Johnson and Ellen Johnson his wife, of the County of Lawrence State of Indiana do hereby remise, release and forever convey and quit claim to the Evansville and Richmond Railroad Company a perpetual right of way Eighty feet in width in Spider Creek Valley for the building and maintenance of its road, main tracks, side tracks and switches, across my land in County and State aforesaid, being described as follows to wit: A strip of land eighty feet in width being forty feet in each side of the centre line of track of said railroad as located in the Valley of Spider Creek in and through the East half of the North West quarter of section number twenty two in Township Five North of Range One West in Shawswick Township in Lawrence County, Indiana.

Def.'s Mot. Ex. 10 (emphasis added).

As explained above with respect to Section 22 in the Whitted Conveyance, the fact that the deed is titled "Release of Right of Way" and conveys a perpetual "right of way" to the railroad for "the building and maintenance of its road main tracks, side tracks and switches across [grantor's] land . . ." communicates an intent to convey an easement for railroad uses, not an outright grant of land. Public policy does not favor the conveyance of strips of land in fee simple to railroad companies for right-of-way purposes.  See Ross, Inc., 199 N.E.2d at 348.

Additionally, instances where consideration is nominal or "the only consideration is the benefit to be derived by the grantor from the construction of the railroad rather than the full market value for the interest acquired" reflect an intent to create an easement.  Richard S. Brunt Trust, 458 N.E.2d at 255.  Here, the consideration was substantially less than that listed in other deeds. While this alone would not be sufficient to establish an intent to convey an easement, it is a factor in interpreting the parties' conveyance.  In sum, because of the title referencing a "right of way," language granting a "right of way" limited to the building and maintenance of railroad tracks and switches, and the nominal consideration, the Johnson deed conveyed an easement.

There is an issue, however, as to whether the Silvers own the property subject to this easement.  Defendant argues that the Silvers have not established that they are the owners of the fee estate subject to the easement and that there is no title evidence supporting their ownership. Plaintiffs, in their opening brief, represent that all of the Plaintiffs:

> own the fee estate in land in Martin and Lawrence Counties, Indiana, underlying and abutting portions of the 20.74 mile-long abandoned railroad right-of-way that is subject to the STB's March 2010 order invoking Section 8(d) of the Trails Act.

> The deed and tax records . . . document these owners held title to the fee estate on
> March 25, 2010 when the STB invoked section 8(d).  The government does not
> dispute the authenticity of these documents, nor does the government dispute these
> owners' claim to hold title to the fee estate in their land on March 25, 2010.

Pls.' Mot. 6.

With respect to their reliance on the deed conveying Lot 155 to the Silvers, Plaintiffs acknowledge that neither the deed nor the referenced plat expressly states or depicts that the right-of-way traverses Lot 155.  Rather, given the parties' agreement that Lot 155 abuts the railroad right-of-way, Plaintiffs rely on the Court of Federal Claims' ruling in Macy Elevator, Inc. v. United States, 97 Fed. Cl. 708, 720 (2011) that

> where, as here, no known deed includes a description of the right-of-way, those
> landowners holding property abutting a railroad right-of-way have a present fee
> interest to the center of the right-of-way, subject to the railroad's easement.

The Court in Macy Elevator relied upon Calumet National Bank v. American Telephone & Telegraph Co., 682 N.E.2d 785, 789 (Ind. 1997) and noted that

> this common law principle is codified in the Indiana statute that provides that when
> a railroad right-of-way overlying a piece of property is not described in a deed, the
> railroad's interest vests . . . in the owner of the adjoining fee . . . from the center
> line of the railroad right-of-way to the adjoining property line.

Id. (omissions in original) (emphasis added) (internal footnote, citations, and quotation marks omitted).  The Macy Elevator Court continued:

> This view is supported by the decision in Schmitt v. United States, another Indiana
> rails-to-trails case, in which the federal district court applying Indiana law
> concluded that even where a plaintiff's deed exclude[d] the Railroad right-of-way
> in its description of lands owned, the Indiana Supreme Court would be likely to
> find fee ownership in the abutting landowner.  That court looked not only to the
> Calumet decision, but also to Indiana's policy disfavoring the alienation of strips
> of land from abutting estates.

Id. at 720 (alteration in original) (emphasis added) (internal citations and quotation marks omitted).  Based on Macy Elevator, Plaintiffs posit that because neither the deed nor the plat references the abutting right-of-way, the Silvers own the adjoining property to its centerline.  See Tr. 59-62 (Dec. 6, 2017).

The deed by which the Silvers acquired their property, a Warranty Deed, dated July 30, 1994, "CONVEY[S] and WARRANT[S]" to the Silvers real estate described as "Lot Number 155 in Edgewood Second Addition to the City of Bedford, as shown by plat thereof, recorded in Plat Book 2, page 62, in Recorder's Office in Lawrence County, Indiana."  Def.'s Mot. Ex. 18.  Lot 155 is laid out on the plat as a rectangular parcel that is 100 feet in width, 292 feet in length on its southern boundary, and 317 feet in length on its northern boundary.  Id. Ex. 19, at 2.  Lot 155 has 100 feet of frontage on Woodhill Drive, and its rear boundary abuts the edge of the railroad right-of-way.  Id.  Under Indiana law, "when lands are conveyed according to an official plat of their

survey, the plat with its notes becomes as much a part of the grant or deed by which they are conveyed, and controls the same as if they were inserted in the deed or grant." <u>Wischmeyer v. Finch</u>, 107 N.E.2d 661, 664 (Ind. 1952). The "centerline presumption" is a rule of deed construction providing that unless a contrary intention appears or is clearly inferable from the terms of the deed of conveyance, the grantee of land bound by a nonnavigable stream or river or an adjacent strip in the bed of a public highway is presumed to own to the centerline of the road bed or the thread of the stream. <u>Earhart v. Rosenwinkel</u>, 25 N.E.2d 268, 272 (Ind. Ct. App. 1940) (en banc). When the intention of the grantor is express however, the "grantee will be governed by such expressed intentions." <u>Id</u>.; <u>see also</u> <u>Maxwell v. Hahn</u>, 508 N.E.2d 555, 558 (Ind. Ct. App. 1987) (finding the centerline presumption rebutted by the subdivision plat that defined the lots and designated the strip as common ground).

Defendant argues that the Edgewood Second Addition subdivision was platted to include only the land adjacent to the railroad corridor, and that the legal dimensions of Lot 155 do not include the right-of-way. As a result, Defendant states, the Silvers only acquired the lot as platted when they acquired Lot 155 via warranty deed - - not the abutting railroad corridor to its centerline. Defendant argues that the centerline presumption is inoperative and cannot be invoked by Plaintiffs because the clear intent of the deed was only to grant property within the confines of Lot 155.

The following is a depiction of the plat for Lot 155 as it appears in the Edgewood Second Addition to the City of Bedford Plat, recorded in Plat Book 2, Lawrence County, Indiana:



Id.  At the bottom of the plat, the handwriting on the railroad centerline reads "CM STP [two illegible letters] RR."  Id.

Defendant contends that the plat circumscribed the Silvers' ownership to the dimensions expressly stated in the plat, and that Plaintiffs have the burden of proving that no other deeds refer to the right-of-way - - a burden they failed to meet.  Plaintiffs respond that they are not required to prove the absence of other deeds in light of Macy Elevator and the centerline presumption. However, as Defendant argues, the Court in Macy Elevator did address a scenario "where no known deed includes a description of the right of way." 97 Fed. Cl. at 720 (emphasis added). From this, Defendant argues that Plaintiffs have the burden of coming forward with evidence to establish that "there are no deeds out there that refer to the right-of-way so that they can take advantage of what's sometimes called the centerline presumption." Tr. 59.  Defendant points out

that such proof is particularly important in the case of a specified lot within a platted residential subdivision. Id. at 62. Defendant cites Maxwell, a case involving a subdivision where the Court of Appeals of Indiana stated:

> While it is true that the presumption that these strips of land should belong to the adjacent landowner has been invoked in this state, the Earhart[3] court specifically stated that that presumption is rebutted when it clearly appears from the language of the conveyance that the contrary was actually intended[.] Since the language of the conveyance here expressly reserved the common ground and the lake approaches for the use of both the Second and Third Addition owners, any presumption that these strips of land belonged to the adjacent landowners was clearly rebutted.

508 N.E.2d at 558 (alteration in original) (emphasis added) (internal footnote, citation, and quotation marks omitted).

It is unclear from the current record how the subdivision in which Lot 155 is located treats the railroad right-of-way vis-à-vis the defined lots. While there is no express reservation of the area of the right-of-way as a common area in the deed, there is some ambiguity in the record in light of the partially illegible notation on the railroad's centerline on the plat stating "CM STP [two letters illegible] RR," coupled with the fact that Lot 155 is part of a subdivision.

Because there are genuine issues of material fact as to whether the Silvers owned land subject to the easement on March 25, 2010, the Court denies summary judgment for either party at this time.

**The Cox Conveyance (Cessna Corporation)**

The Cessna Corporation owns a parcel of land adjacent to the segment of the corridor conveyed on January 4, 1889, by Henry and Emily Cox, predecessors-in-title to the Cessna Corporation, and recorded in Lawrence County on April 25, 1889. The Cox deed is titled "Release of Right of Way" and states:

> In consideration of the sum of Five Dollars, Dollars [sic] and of the benefits to us derived therefrom, the receipt of which is hereby acknowledged, I, Henry Cox and Emily J. Cox his wife of the County of Lawrence, State of Indiana, do hereby remise, release and forever convey and warrant to the Evansville & Richmond Railroad Company, so long as so used a perpetual right of way for the building and maintenance of its road, main tracks, side tracks and switches across my land in County and State, aforesaid, being described as following to wit: and after said road is built a strip of land seventy feet in width being thirty-five (35) feet from the center line of the track of said road as it is now located and shall be constructed–except at siding, where it shall be one hundred and forty feet wide, over through and across the following lands to wit: Commencing at the one fourth section corner on the West side of section four (4) township four (4) North, range two (2) West, thence East about one hundred and twenty two and one half (122 ½) rods, to the lands of

---

3          Earhart v. Rosenwinkel, 25 N.E.2d 268, 272 (Ind. Ct. App. 1940) (en banc).

Jacob Bossett, thence South about one hundred and forty (140) rods, to the North Bank of White River; thence down said stream with the meanderings thereof to the section line dividing sections four and nine, thence West to the South West corner of said section four, thence North to the place of beginning Containing one hundred and six acres more or less, in Lawrence County, Indiana, said railroad company to construct and maintain necessary road crossings and cattle guards, also to fence said right of way.  Said Company to locate build and maintain a regular station on its said line at or near Williams' Post office in said section four of the township and range aforesaid.

Def.'s Mot. Ex. 11 (emphasis added).

The deed contains strong language limiting the use of the right-of-way for railroad purposes.  The deed specifies that the corridor is conveyed to the Railroad Company "so long as so used" for the building and maintenance of its road, tracks, side tracks, switches, etc.  Had the parties intended to convey an interest in fee simple, there would have been no reason to specify the use of the land.  See Richard S. Brunt Trust, 458 N.E.2d at 256.  Defendant argues that the "so long as" limitation only applies to the initial grant of a perpetual right-of-way for construction and maintenance, and may be properly viewed as a grant of a fee simple interest subject to a condition subsequent.  According to Defendant, because the condition, the construction of the road, was apparently satisfied, the strip of land was therefore conveyed in fee simple.  The Court disagrees.

The deed is titled "Release of Right of Way" and specifically conveys a "perpetual right of way."  A deed that conveys a right generally conveys only an easement.  Brown, 510 N.E.2d at 644.  When the term "right-of-way" is used in the descriptive clause, in reference to the subject matter of the deed, as opposed to elsewhere in the deed, the deed is much more likely to be found to convey an easement.  CSX Transp., Inc., 691 N.E.2d at 1278.  Although the temporal modifier "perpetual" is consistent with the conveyance of a fee, where such modifier describes a "right of way" with references to railroad purposes, the totality of the language conveys an easement.  Here, the deed conveys a perpetual right-of-way, and the limiting language "so long as so used" for the building and maintenance of the railroad, clearly conveys an intent to limit the interest to an easement.  Further, the conveyance refers to the land as belonging to the grantor ("across my land" and "over through and across" the described land of the Grantor).  Finally, the nominal consideration reflects an intent to create an easement.  Richard S. Brunt Trust, 458 N.E.2d at 255.

### The Woodward Conveyance

The parties have not located the original deed by which the Evansville & Richmond Railroad Company or its predecessors acquired its interest in the segment of the corridor that crosses the Woodwards' land.  Under Indiana law, absent such a deed, the interest acquired by adverse possession must be construed as an easement for railroad purposes.  See Meyer v. Pittsburgh, Cincinatti, Chi. & St. Louis Ry. Co., 113 N.E. 443, 446 (Ind. Ct. App. 1916); accord Macy Elevator, 97 Fed. Cl. at 734-35.

## Were the Easements Limited to Use For Railroad Purposes or Did They Include Future Use as a Public Recreational Trail?

In rails-to-trails cases a taking by the Government is established if the railroad acquired only an easement, the easement was limited to railroad purposes, and the scope of the original easement did not include recreational trail use.  Preseault II, 100 F.3d at 1533.  Indiana Courts have held that trail use is a use outside the scope of an easement limited to railroad purposes. Howard v. United States, 964 N.E.2d 779, 780 (Ind. 2012).  The original interest obtained from the landowners' predecessors in title can be no greater than the purpose for which the easement was used at that time.  N.Y. Cent. R.R. Co. v. Yarian, 39 N.E.2d 604, 606 (Ind. 1942).  The purpose of the easements granted to INRD was the operation of a railroad line for transportation.  The transformation of a railway line to a public trail imposes a different purpose on the corridor.  The operation of a railroad line is a commercial enterprise of transport, whereas a public trail is an activity of "recreation, not transportation."  Preseault II, 100 F.3d at 1554 (Rader, J., concurring). The easement cannot now be recast for use as a public recreational trail without exceeding the scope of the easement and infringing the rights of the landowners.   As the Federal Circuit explained:

> Although a public recreational trail could be described as a roadway for the transportation of persons, the nature of the usage is clearly different.  In one case, the grantee is a commercial enterprise using the easement in its business, the transport of goods and people for compensation.  In the other, the easement belongs to the public, and is open for use for recreational purposes, which happens to involve people engaged in exercise or recreation on foot or on bicycles.

Id. at 1542-43 (majority opinion).  Therefore, to the extent that the railroad company obtained easements to use the land for railroad purposes, usage of the land for a recreational trail is outside the scope of the easement.[4]

## Conclusion

The Cosner, Dussard, Whitted, and Cox deeds conveyed easements to the Evansville and Richmond Railroad for the sole purpose of operating a railroad, and therefore the NITU effected a Fifth Amendment taking of property for the parcels governed by those deeds.  Plaintiffs' motion for summary judgment is **GRANTED**, and Defendant's motion for summary judgment is **DENIED** as to the claims of Plaintiffs Stipp, Anderson, Schulenburg, and the Cessna Corporation.

---

[4]       Under the Federal Circuit's holdings, the question of whether the railroad abandoned the original easement is only relevant if the original easement granted a right to use the land for public recreation.  See Preseault v. United States, 100 F.3d 1525, 1549 (Fed. Cir. 1996); Ellamae Phillips Co. v. United States, 564 F.3d 1367, 1373 (Fed. Cir. 2009) (instructing that the Trails Act taking analysis proceeds by first, determining if the railroad owns an easement or fee simple, second, determining the scope, and third, if the scope is sufficiently broad, determining whether the railroad abandoned the easement (emphasis added)); Toews v. United States, 376 F.3d 1371, 1376 (Fed. Cir. 2004) ("The defining issue in this case is the question of the scope of the easements originally granted to the railroad.").  Therefore, because trail use is outside the scope of the easements in this case, it is unnecessary for this Court to address abandonment.

Under Indiana law, when the original deed is unavailable, the interest acquired by adverse possession is an easement for railroad purposes.  Therefore, Plaintiffs' motion for summary judgment is **GRANTED** as to the claims of Plaintiffs Woodward.

The Johnson deed conveyed an easement to the Evansville and Richmond Railroad for the sole purpose of operating a railroad, but because there is a question of material fact as to the Silvers' ownership of the railway corridor, entry of summary judgment is precluded at this time. Therefore, Defendant's motion for summary judgment is **DENIED**, and Plaintiffs' motion for summary judgment is **DENIED** as to the claims of Plaintiffs Silvers.

The parties shall file a joint proposed schedule, including trial dates and locations, by **April 16, 2018**.

s/Mary Ellen Coster Williams
**MARY ELLEN COSTER WILLIAMS**
**Judge**