# In the United States Court of Federal Claims

No. 16-371L
(Filed: October 23, 2018)

| | | |
|---|---|---|
| * * * * * * * * * * * * * * * * * * * * * * * * * * | | |
| | * | **Summary Judgment; Fifth Amendment Takings; National Trails System Act; 16 U.S.C. § 1247(d); Crossing Rights; Ind. Code § 8-6-14-1.** |
| **DELBERT and CATHY SCHULENBURG, et al.,** | * | |
| | * | |
| | * | |
| Plaintiffs, | * | |
| | * | |
| v. | * | |
| | * | |
| **THE UNITED STATES,** | * | |
| | * | |
| Defendant. | * | |
| | * | |
| | * | |
| * * * * * * * * * * * * * * * * * * * * * * * * * * | | |

Mark F. (Thor) Hearne, II, Lindsay S.C. Brinton, Meghan S. Largent, and Stephen S. Davis, Arent Fox, LLP, 112 South Hanley Road, Suite 200, Clayton, MO 63105, for Plaintiffs.

Kristine S. Tardiff, United States Department of Justice Environment & Natural Resources Division, Natural Resources Section, 53 Pleasant Street, 4th Floor, Concord, NH 03301, and Jeffrey H. Wood and Laura Duncan, United States Department of Justice Environment & Natural Resources Division, Natural Resources Section, P.O. Box 7611, Washington, DC 20044-7611, for Defendant.

_____

**OPINION AND ORDER**
_____

**WILLIAMS**, Senior Judge.

This rails-to-trails action comes before the Court on Defendant's motion for partial summary judgment.[1] Defendant moved for summary judgment on two issues: whether the Stipps

---

[1] Although Plaintiffs had filed a submission they styled as a cross-motion for partial summary judgment, they subsequently acknowledged that they did not seek entry of judgment in their favor. Rather, Plaintiffs asked that the Court allow "the Stipps to present evidence of diminished value of their property in the after-taken condition due to the loss of a legally-enforceable right to use and cross the land now encumbered by the federal rail-trail corridor." Pls.' Resp. 3. During oral argument on August 23, 2018, Plaintiffs' counsel stated that Plaintiffs do not at this time "have anything teed up for the Court to resolve as a matter of law," but were requesting

have a right under Indiana law to cross the rail corridor and whether Section 8 of the Trails Act preempts or extinguishes state law crossing rights.

This Court previously determined that Defendant effected a Trails Act taking of the segment of the railroad corridor that crosses the Stipps' property. Schulenburg v. United States, 137 Fed. Cl. 79, 98-99 (2018). The parties are currently engaged in settlement discussions and have requested that the Court resolve the crossing rights issue to define the scope of the taking and facilitate their negotiation of just compensation. Tr. 5, 12-15 (June 20, 2018).

For the reasons stated below, this Court concludes that the Stipps have crossing rights under Indiana law and that the Trails Act taking did not impact those rights. While the valuation of the property in the after condition may present factual issues, the valuation issue is not presently before the Court. Tr. 24-25 (Aug. 23, 2018); Def.'s Reply 2. As such, Defendant's motion for summary judgment is granted.

## Background

The Crane-Bedford Railroad Line was initially developed by the Evansville and Richmond Railroad, a company incorporated in Indiana on September 11, 1886. The Evansville and Richmond Railroad acquired the segments of the corridor via six deeds from grantors Ferguson, Cosner, Dussard, Whitted, Johnson, and Cox in the 1880s.

In 1897, the Evansville and Richmond Railroad was acquired by John R. Walsh and renamed the Southern Indiana Railroad. Through a series of railroad reorganizations, mergers, and acquisitions, the line was eventually acquired by Canadian Pacific Railway, and ultimately, in 2006, Indiana Rail Road ("INRD") acquired Canadian Pacific's portion of the line between Chicago, Illinois and Louisville, Kentucky by quitclaim deed. Since INRD's acquisition, traffic on the Crane-Bedford line has decreased, and on December 7, 2009, INRD filed a petition with the STB seeking an exemption under 49 U.S.C. § 10502 from the prior approval requirements of 49 U.S.C. § 10903 to abandon approximately 21.15 miles of its railroad corridor extending across portions of Martin and Lawrence counties in Indiana. INRD determined that the limited amount of overhead traffic hardly justifies the costs of maintaining the Line.

On March 26, 2010, the STB issued a NITU for the Crane-Bedford Line, and provided INRD and the Indiana Trails Fund, Inc. ("ITF") with 180 days to negotiate an agreement for interim trail use and railbanking of the corridor. On September 16, 2011, INRD entered into a License Agreement with ITF, relating to the railroad right-of-way ("Licensing Agreement"). Under the Licensing Agreement, INRD granted ITF the right to occupy the premises for use as a "bicycle-pedestrian-equestrian recreational-transportation trail" while reserving rights regarding the continued and future use of the premises for utility facilities and other structures within the corridor. The Licensing Agreement also reserved for INRD all current and future mineral rights in the premises and required ITF to assure that its use would not interfere with the rights reserved by INRD. In addition, INRD expressly retained the right to reactivate railroad service over all or part of the premises. The subject corridor is presently known as the Milwaukee Road

---

an opportunity to develop the record to prove what the difference between the unencumbered and encumbered value of the Stipps' property would be. Tr. 30 (Aug. 23, 2018).

Transportation Trailway, and portions of the trail have been improved and opened for recreational use.

The Evansville and Richmond Railroad Company originally acquired the Stipp segment of the corridor by two warranty deeds, the Ferguson and Cosner deeds. The Ferguson deed conveyed a fee simple interest to the Railroad under Indiana law. The Court found the Cosner deed conveyed an easement because it specified that the use of the land was for "Rail Road purposes," referred to the corridor as a "right of way," and included the Grantor's waiver of damages due to the Railroad's digging up and removing about four acres of dirt - - damages which the Grantors would not have needed to waive if they had conveyed the land outright to the Railroad in fee simple.

The new recreational trail corridor bisects the Stipps' property, leaving the southern remainder of the property landlocked. During settlement discussions, the landowners retained a local appraiser to determine the value of the property the Government took from these owners, including the Stipp family. The appraiser, David Matthews, is the same appraiser retained in a companion case, McCarty v. United States (No. 14-316), who valued properties in Martin and Lawrence Counties, Indiana. Mr. Matthews used his research and analysis from the McCarty appraisals to derive preliminary appraisal summaries for the subject properties in this action. Based upon Mr. Matthews' appraisal summaries, the parties were able to tentatively resolve the compensation due all of the owners, except the Stipps. Mr. Matthews opined that the Government took 6.35 acres of the Stipps' land for the recreational trail corridor and that "55 acres of tillable land on the river are landlocked by the take." Pls.' Resp., Ex. 2.

## Discussion

**Summary Judgment Standard**

Summary judgment is appropriate where the evidence demonstrates that there is "no genuine dispute as to any material fact and the moving party is entitled to a judgment as a matter of law." RCFC 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). A genuine issue is one that "may reasonably be resolved in favor of either party." Liberty Lobby, 477 U.S. at 250. A fact is material if it "might affect the outcome of the suit . . . ." Id. at 248. The moving party bears the burden of establishing the absence of any genuine issue of material fact, and any doubt over factual issues will be resolved in favor of the non-moving party. Mingus Constructors, Inc. v. United States, 812 F.2d 1387, 1390 (Fed. Cir. 1987) (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) and SRI Int'l v. Matsushita Elec. Corp., 775 F.2d 1107, 1116 (Fed. Cir. 1985)). Once the moving party's burden is met, the onus shifts to the non-movant, who must present sufficient evidence of a material fact in dispute that would allow a reasonable finder of fact to rule in the non-movant's favor. Liberty Lobby, 477 U.S. at 256-57. The evidence need not ultimately be admissible, but mere denials, conclusory statements, or evidence that is merely colorable or not significantly probative will not defeat summary judgment. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986); Liberty Lobby, 477 U.S. at 249-50; Mingus Constructors, 812 F.2d at 1390-91. A court does not weigh each side's evidence when considering a motion for summary judgment, but "'inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp, 475 U.S. 574, 587 (1986) (quoting Diebold, 369 U.S. at 655) (omission in original).

**Crossing Rights under Indiana Law**

Defendant contends that the right to cross a right of way that divides one's land is well established under Indiana law. Plaintiffs disagree and argue that there is uncertainty in Indiana law regarding a landowner's right to cross the land encumbered by the rail-trail corridor and that further litigation would be required to establish their rights. The Court concludes that crossing rights are well established under Indiana law, and that these rights run with the land. As explained by the Indiana Supreme Court,

> [i]t is settled law that if one conveys a part of his land in such form as to deprive himself of access to the remainder, unless he goes across the land sold, he has a way of necessity over the portion conveyed. This is because the law presumes an understanding of the parties that the one selling a portion of his land shall have a legal right of access over the part sold to the remainder if he cannot reach it in any other way. This presumption prevails over the ordinary covenants of a warranty deed.

Vandalia R.R. Co. v. Furnas, 106 N.E. 401, 402 (Ind. 1914) (citations omitted); see also Pittsburgh, Cincinnati, Chi. & St. Louis Ry. Co. v. Kearns, 108 N.E. 873, 875 (Ind. Ct. App. 1915) (finding that the right to a crossing "runs with the land").

The Indiana Supreme Court held in Vandalia that, due to this legal presumption regarding access, no express provision in the original deed granting such crossing rights was necessary, but rather that "[t]his privilege to cross the right of way was an easement running with the lands" and therefore passed to the successors of the original grantor to the railroad. Id. at 402. The Indiana Supreme Court noted in Vandalia that the state legislature in the 1800s expressly provided that "notwithstanding the conveyance, the grantor may have a wagon and driveways across such right of way to other lands owned by said grantor, or to a public highway contiguous to the right of way." Id. at 402 (citing Ind. Code Ann. § 5444 (1914)).

As a matter of Indiana law, this right to cross runs with the land and passes to subsequent owners of the land. Vandalia, 106 N.E. at 402; see also William C. Haak Trust v. Wilusz, 949 N.E.2d 833, 836-38 (Ind. Ct. App. 2011) (stating that "the right to an easement of necessity does not expire or attach itself to a particular owner; there is no statute of limitations on easements of necessity and the right to one does not expire upon transfer of either the dominant or servient estates"). Because the land owned by the Fergusons and the Cosners was divided by the right-of-way when they conveyed that right-of-way to the railroad in the 1890s, the Stipps, as the successors-in-interest to these grantors, acquired a statutory right to cross the subject right-of-way. The absence of any express reference to crossings in the Ferguson and Cosner deeds, or in the deed by which the Stipps acquired the land, is of no consequence under Indiana law. Vandalia, 106 N.E. at 402.

Under Indiana law, Plaintiffs' predecessors acquired an enforceable right to cross the corridor when the railroad right-of-way was established and severed their land in 1893, and Plaintiffs as successors have held this right for as long as they have owned the property. Plaintiffs do not allege there has been any interference with their crossing rights and acknowledge that the crossing identified on the maps filed by the United States has been in place since at least 1916, and is used to access their farmland on the south side of the subject corridor. Def.'s Mot. Exs. 24-26; Def.'s Reply Ex. 27.

Plaintiffs contend that the presumption of crossing rights would not apply if there were a severance of ownership between the tracts of land that had been separated by the railroad easement, relying on the following language in Vandalia:

> There are no facts shown in this case, which would, under any law, entitle appellee to a way of necessity, either from the lands occupied by her to other lands owned by her, or to a public highway.  If the crossing was maintained, it would lead appellee to no lands, owned by her, nor to a public highway.

Vandalia, 106 N.E. at 403.  Read in context, this language in Vandalia does not help Plaintiffs.  The quotation addresses a different factual scenario where the appellee was not entitled to damages for the destruction of a crossing after land had been severed and the severed parcel was neither owned by the party claiming damages nor was a public highway.  The language Plaintiffs identified in Vandalia does not change the longstanding presumption that generally under Indiana law crossing rights run with the land, as the Vandalia court recognized.  Vandalia, 106 N.E. at 402 ("The privilege to cross the right of way was an easement running with the lands when owned by [the original grantor], and also to successive grantees of the whole tract.  Elliott on Railroads [vol. 3 § 1138].").  Here, Plaintiffs continue to own "the whole tract" of their property situated on both sides of a crossing that remains in use.

Finally, Plaintiffs argue that although the Indiana statute may afford an opportunity for a landlocked property owner to obtain an easement of necessity, the landlocked owner has "the burden of proving its right to an easement of necessity."  William C. Haak Trust, 949 N.E.2d at 835.  Plaintiffs posit that proving their right to such an easement would require the filing of an expensive and time-consuming quiet title action, but they do not cite any authority in support of this assertion, and this Court deems the need for such a potential action to be speculative in light of the Indiana law establishing crossing rights.  Ind. Code Ann. § 5444 (1914); Vandalia, 106 N.E.2d at 402.

**Operation of the Trails Act**

Contrary to Plaintiffs' argument, the Stipps' crossing rights were not eliminated by operation of the Trails Act.  Under Section 8(d) of the Trails Act, interim use of any established railroad right-of way as a trail "shall not be treated, for purposes of any law or rule of law, as an abandonment of the use of such rights-of-way for railroad purposes."  16 U.S.C. § 1247(d).  This provision does not, by its plain language or otherwise, preempt the rights held by the owners of the servient estate, including crossing rights that were created, recognized and protected under state law. As the Court of Federal Claims has recognized, the operation of the Trails Act does not impact "established, but unrecorded crossings."  Dana R. Hodges Trust v. United States, 111 Fed. Cl. 452, 457 (2013).  In so holding, the Court found that "the status quo ante has not been disturbed by the transformation of the railroad corridor into a recreational trail."  Id.  It is undisputed that the Stipps have an established private road crossing that they and their predecessor owners have been using since at least 1916, to access their property on the south side of the railroad corridor.  In Dana R. Hodges Trust, as here, Plaintiffs provided no evidence that, over the years since the issuance of the NITU, the Trails Act had interfered with any of the established, but unrecorded crossings.  Therefore, the trail operator's "scope of easement" "retain[ed] essentially the same characteristics as the original easement."  Id.; see also Sears v. United States, 132 Fed. Cl. 6, 25-26 (2017) (rejecting plaintiffs' contention that their crossing rights under Iowa law were affected

5

by the conversion of the corridor from rail use to trail use, finding that the plaintiffs "had no change in their access rights," and that their crossing rights were not preempted by the Trails Act).

Plaintiffs further argue that summary judgment should not be entered for Defendant because "the extent to which the value of the property is diminished by the loss of use of the land encumbered by the rail-trail corridor is an issue of fact." The Court is not, however, addressing valuation, as the only issue before the Court is the existence of crossing rights. See Dana R. Hodges Trust, 111 Fed. Cl. at 459 (finding that if limitations on crossing rights diminished the highest and best use of land, this diminished value should be reflected in the valuation of the after condition, thus forming the basis for just compensation, but would not "legally foreclose[]" a plaintiff's crossing rights).

## Conclusion

Under Indiana law, Plaintiffs acquired a right to cross the corridor when the railroad right-of-way was established and severed their land. Plaintiffs have held this right as long as they have held their property, and the Trails Act taking has done nothing to extinguish this crossing right. As a matter of law, the operation of the Trails Act does not interfere with the Stipps' pre-existing right to cross the corridor to access and use their land that is severed by the corridor.

Defendant's motion for summary judgment is **GRANTED**.

s/Mary Ellen Coster Williams
**MARY ELLEN COSTER WILLIAMS**
**Senior Judge**